U.S. POSTAGE ≫ PITNEY BOWES

ZIP 15106 $ 001.82⁰

3/2 670 - 4097

RECEIVED 3-7-17
(FROM MARK DAVIS, PRO SE DEBTOR)

**KML LAW GROUP, P.C.**
Suite 5000 • BNY Mellon Independence Center
701 Market Street • Philadelphia, PA 19106

Mark Davis – PRO SE
2342 School Street
Penn Hills, PA 15235

# KML LAW GROUP, P.C.
**701 MARKET STREET, SUITE 5000**
**Philadelphia, PA 19106**
www.kmllawgroup.com

February 6, 2017

Mark Davis
2342 School Street
Penn Hills, PA 15235

RE:    Mark Davis
       Bankruptcy Case Number:  16-24792 JAD
       Our File Number:  165916BK
       Response Deadline:  02/23/2017
       Hearing Date:  03/07/2017 at 10:00am

Dear Sir or Madam:

Enclosed for service upon you and your counsel, is a true and correct copy of the Motion for Relief From Automatic Stay Under Section 362, filed by the lender, BANK OF AMERICA, N.A. on February 6, 2017.

Also enclosed is the Notice of Motion, Response Deadline and Hearing Date which directs that the date within which an Answer must be filed by the Response date of February 23, 2017; and that the hearing on the Motion will be held on March 7, 2017 at the time and place indicated.  Please contact your attorney if you wish to amicably resolve this matter prior to the Response Deadline of February 23, 2017. If you are represented by counsel, we must have their written authority to speak to you directly.

KML LAW GROUP, P.C.

*/s/ Rebecca Pereira*
Rebecca Pereira, Legal Assistant
For James C. Warmbrodt, Esquire
Direct (215) 825-6366
Fax (215) 825-6466
rpereira@kmllawgroup.com

Enclosure
JCW/rp

cc:    Attorney:  Mark Davis
       Trustee:  Robert Shearer

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  Mark Davis | |
| Debtor | |
| | |
| BANK OF AMERICA, N.A., | BK. NO. 16-24792 JAD |
| its successors and/or assigns | |
| Movant | CHAPTER 7 |
| v. | |
| Mark Davis | |
| Respondent | FILED UNDER LOCAL BANKRUPTCY |
| and | RULE 9013.4 SECTION 6 |
| Robert Shearer, Trustee | |
| Additional Respondent | |

### MOTION OF BANK OF AMERICA, N.A., ITS SUCCESSORS AND/OR ASSIGNS FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362 PURSUANT TO BANKRUPTCY PROCEDURE RULE 4001

Bank of America, N.A., ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 2342 School Street Pittsburgh, PA 15235 (the "Property"), for all purposes allowed by the Note (defined below), the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on December 29, 2016.

2.      Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $80,958.00 (the "Note"). A copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to enforce the Note.

3.      Pursuant to that certain Mortgage, dated  June 4, 1999 and recorded in the office of the county clerk of Allegheny County, Pennsylvania, (the "Mortgage"), all obligations (collectively, the "Obligations") of Debtor under and with respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit B.

4.    As of January 11, 2017, the outstanding Obligations are:

| Unpaid Principal Balance | $69,370.06 |
|---|---|
| Unpaid, Accrued Interest | $36,852.93 |
| Uncollected Late Charges | $168.59 |
| Mortgage Insurance Premiums | $22.45 |
| Taxes and Insurance Payments on behalf of Debtors | $26,084.68 |
| Other Costs | $12,091.50 |
| **Less:** Partial Payments | $0.00 |
| Minimum Outstanding Obligations | $144,590.21 |

5.    The foregoing Other Costs consist of the following:

| Prepetition or Postpetition | Fee Description | Amount |
|---|---|---|
| Prepetition | Inspection – Occupied | $20.00 |
| Prepetition | Inspection – Occupied | $20.00 |
| Prepetition | Inspection – Occupied | $20.00 |
| Prepetition | Inspection – Occupied | $20.00 |
| Prepetition | Inspection – Occupied | $20.00 |
| Prepetition | Inspection – Occupied | $15.00 |
| Prepetition | Inspection – Occupied | $15.00 |
| Prepetition | Inspection – Occupied | $15.00 |
| Prepetition | Attorney/Trustee Fee | $50.00 |
| Prepetition | Attorney/Trustee Fee | $260.00 |
| Prepetition | Process Server | $75.00 |
| Prepetition | Attorney/Trustee Fee | $350.00 |
| Prepetition | Litigation Mgt Fee | $262.50 |
| Prepetition | Litigation Mgt Fee | $1,400.00 |
| Prepetition | Litigation Mgt Fee | $1,050.00 |
| Prepetition | Litigation Mgt Fee | $1,312.50 |
| Prepetition | Filing Fee | $41.50 |
| Prepetition | Sheriff's Fees | $1,600.00 |
| Prepetition | Title Fees | $600.00 |
| Prepetition | Attorney/Trustee Fee | $215.00 |
| Prepetition | Litigation Mgt Fee | $4,730.00 |

6.    In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $650.00 in legal fees and $181.00 in legal fees. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

7.    The following chart sets forth the number and amount of pre and post-petition payments due pursuant to the terms of the Note that have been missed by Debtor as of January 11, 2017:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 1 | 02/01/2010 | 02/01/2010 | $896.43 | $896.43 |
| 16 | 03/01/2010 | 06/01/2011 | $743.64 | $11,898.24 |
| 5 | 07/01/2011 | 11/01/2011 | $961.21 | $4,806.05 |
| 12 | 12/01/2011 | 11/01/2012 | $879.54 | $10,554.48 |
| 12 | 12/01/2012 | 11/01/2013 | $879.52 | 10,554.24 |
| 12 | 12/01/2013 | 11/01/2014 | $885.23 | $10,622.76 |
| 12 | 12/01/2014 | 11/01/2015 | $927.54 | $11,130.48 |
| 12 | 12/01/2015 | 11/01/2016 | $916.92 | $11,003.04 |
| 2 | 12/01/2016 | 01/01/2017 | $938.32 | $1,876.64 |
| Less postpetition partial payments (suspense balance): | | | | ($0.00) |

**Total: $73,342.36**

8.    The estimated market value of the Property is $75,000.00. The basis for such valuation is Debtor's Schedule "A". The Debtor claimed exemption in Schedule C on the property in the amount of $0.00.

9.    Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in order of priority are:  (i) Movant ($144,590.21). There is no equity in the property.

10.    The amount of the next monthly payment of the Debtors under the terms of the Note and Mortgage is $938.32.

11.    Cause exists for relief from the automatic stay for the following reasons:

a).    Movant's interest in the Property is not adequately protected.

b).    Movant's interest in the collateral is not protected by an adequate equity cushion.

c).    The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

d).    Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited allowing Movant (and any successors or assigns) to proceed under applicable non-

bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

      2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

For such other relief as the Court deems proper.

Date: February 6, 2017

                                 **/s/ James C. Warmbrodt, Esquire**    
                                 James C. Warmbrodt, Esquire
                                 jwarmbrodt@kmllawgroup.com
                                 Attorney I.D. No. 42524
                                 KML Law Group, P.C.
                                 701 Market Street, Suite 5000
                                 Philadelphia, PA 19106
                                 Phone: 412-430-3594
                                 Attorney for Movant/Applicant

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: Mark Davis

                Debtor

BK. NO. 16-24792 JAD

BANK OF AMERICA, N.A.,
its successors and/or assigns

                Movant

CHAPTER 7

          v.

Mark Davis

                Respondent

         and

Robert Shearer, Trustee

                Additional Respondent

### DEFAULT ORDER ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

      This _____ day of _____, 2017, upon default, no response objecting to the Motion having been timely filed by an interested party, and upon Movant's Certification of Service and Certification of No Objection, it is

      **ORDERED** that the above-captioned Motion is granted insofar as it requests relief from the Automatic Stay imposed by 11 U.S.C. Section 362, with respect to premises, 2342 School Street, Pittsburgh, PA 15235.

      Movant shall, within five (5) days hereof, serve a copy of the within Order on parties in interest (unless they are otherwise served) and file a certificate of Service.

                            _____
                            United States Bankruptcy Judge

James C. Warmbrodt, Esquire
jwarmbrodt@kmllawgroup.com
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106
Phone: 412-430-3594
Attorney for Movant/Applicant

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: Mark Davis** | **BK NO. 16-24792 JAD** |
|          **Debtor** | |
| | **Chapter 7** |
| **BANK OF AMERICA, N.A.** | |
|          **Movant** | **Related to Document No.** |
|     **vs.** | |
| | **Hearing Date:  March 7, 2017** |
| **Mark Davis** | |
|          **Respondent** | **Hearing Time: 10:00am** |
| | |
| **Robert Shearer, (Trustee)** | **Objection Deadline: February 23, 2017** |
|     **Additional Respondent** | |

### CERTIFICATE OF SERVICE OF NOTICE OF HEARING ON
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, James C. Warmbrodt, of KML Law Group, P.C., certify that I am, and at all times hereinafter mentioned was, more than 18 years of age and that on <u>February 6, 2017</u>, I served the above captioned pleading, along with the Motion filed in the proceeding on the parties at the addresses shown below;

<u>Debtor</u>
Mark Davis – PRO SE
2342 School Street
Penn Hills, PA 15235

<u>Trustee</u>
Robert Shearer
5703 Brewster Lane
Erie, PA 16505
information@robertshearer.com

Method of Service:  electronic means or first class mail

Dated: <u>February 6, 2017</u>

                                        **/s/ James C. Warmbrodt, Esquire**
                                        James C. Warmbrodt, Esquire
                                        jwarmbrodt@kmllawgroup.com
                                        Attorney I.D. No. 42524
                                        KML Law Group, P.C.
                                        701 Market Street, Suite 5000
                                        Philadelphia, PA  19106
                                        Phone: 412-430-3594
                                        Attorney for Movant/Applicant

# EXHIBIT A

# NOTE – INDORSED CLOSING FILE RESOLUTION

## Closing File Resolution - Fax Coversheet to Imaging

| TO: DOCUMENT IMAGING | DATE: 8/21/2015 |
| --- | --- |
| | NUMBER OF PAGES: 5 |
| FAX: ███████████████ | Sender Contact Information |
| | Name: Gayle Kock |
| | Telephone ████████████ |
| Loan Number: ██████████ | Borrower Name: Davis |

| | | Note |
| --- | --- | --- |
| | Qualifier Code ████ | INDORSED |

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVELEDGED, CONFIDENTIAL, OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE ASSOCIATE, OR AGENT RESPONSIBLE FOR
DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION
OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AT THE ABOVE
REFERENCED NUMBER AND DESTROY THIS DOCUMENT.



Multistate ... OTE

JUNE 4, 1999                    PITTSBURGH,                    ....NIA
                               [City]                          [State]

2342 SCHOOL ST, PITTSBURGH, PA 15235
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means STANDARD FEDERAL BANK, A FEDERAL SAVINGS BANK

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of EIGHTY THOUSAND**** NINE HUNDRED FIFTY EIGHT AND NO/100***************************************** Dollars (U.S.  $80,958.00  ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND ONE-HALF            percent ( 7.500% ) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the        1ST      day of each month beginning on AUGUST, 1999.          Any principal and interest remaining on the        1ST    day of JULY, 2029            will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at
P.O. BOX 3710
TROY, MICHIGAN 48007-3710

or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S.     $566.07.     This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]      ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge
                                   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of        15        calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                    percent (     4.000% ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment

defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    (C) Payment of Costs and Expenses

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

MARK R DAVIS                            (SEAL)

PAY TO THE ORDER OF
WITHOUT RECOURSE
STANDARD FEDERAL BANK

FREDERICK A. BARTEL VICE PRESIDENT

Pay to the order of

Without recourse
Bank of America, National Association
Successor by merger to LaSalle Bank, N.A.

Gerald T. Sajdak
Senior Vice President

# Allonge to Mortgage Note

Bank of America loan number: ██████████

Allonge to one certain Mortgage Note Dated: **June 4, 1999**

Executed By:        **Mark R Davis**

Original Amount:    **$80,958.00**

Property Address:   **2342 School St**

                    **Pittsburgh, PA  15235**

Pay to the Order of:

Without Recourse:

**BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR
BY MERGER TO STANDARD FEDERAL BANK**

By: _____

Name: Jennie Stephens

Title:   AVP

██████████████████████

# EXHIBIT B



When recorded mail to:
STANDARD FEDERAL BANK
2600 W. BIG BEAVER RD.
TROY, MICHIGAN 48084

*From: Mark R Davis*

WILL CALL

Parcel Number:

[Space Above This Line For Recording Data]

Commonwealth of Pennsylvania

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   JUNE 4, 1999.                    The Mortgagor is
MARK R DAVIS, A MARRIED MAN

("Borrower").

This Security Instrument is given to  STANDARD FEDERAL BANK, A FEDERAL SAVINGS BANK

which is organized and
existing under the laws of  THE UNITED STATES OF AMERICA
and whose address is   2600 W. BIG BEAVER RD., TROY, MICHIGAN 48084

("Lender").
Borrower owes Lender the principal sum of  EIGHTY THOUSAND NINE HUNDRED FIFTY EIGHT AND NO/100*****
*********************************************************************Dollars
(U.S.        $80,958.00  ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 1, 2029.                     This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the
Lender the following described property located in  ALLEGHENY                                County, Pennsylvania:

which has the address of   2342 SCHOOL ST, PITTSBURGH

[Street, City].
Pennsylvania      15235        ("Property Address");
                [Zip Code]

FHA Pennsylvania Mortgage - 4/96
         PAVFHADE                              Page 1 of 6

Initials: _MD_
PAVFHADE   605

MBV18790PG233

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First , to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second , to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third , to interest due under the Note;

Fourth , to amortization of the principal of the Note; and

Fifth , to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

FHA Pennsylvania Mortgage - 4/96                          Page 2 of 6                          Initials: _____

MBV I 8 7 9 0 P G 2 3 4

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

FHA Pennsylvania Mortgage - 4/96

Initials: __MP__

Page 3 of 6

PAL/FHADE

HBV I 8 7 9 0 PG 2 3 5

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances .** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal

FHA Pennsylvania Mortgage - 4/96                    Page 4 of 6                    Initials: _MD_
                                                                                    PAI.FHADE

HBV18790PG236

or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider           ☐ Growing Equity Rider      ☐ Planned Unit Development Rider
☐ Graduated Payment Rider     ☒ Other(s) [specify]  Legal Description

Initials:  MD
PALFILADE

MBV18790PG237

PARCEL ONE:

ALL those certain lots or pieces of ground situate in the Township of Penn
Hills (formerly known as the Township of Penn), County of Allegheny and
Commonwealth of Pennsylvania, being part of Lots Nos. 70 and 71 in the Plan made
for the New York and Cleveland Gas Coal Company, recorded in the Recorder's Office
in and for Allegheny County in Plan Book Volume 5, page 96, said lots being
together more particularly bounded and described as follows to wit:

BEGINNING at a point on the Southerly side of School Street at the dividing line
between Lots nos. 69 and 70 in said plan: thence along said dividing line, South
50° 30' East a distance of 100 feet to a point on said dividing line; thence by a
line through Lots Nos. 70 and 71 in said plan, South 39° 30' West, a distance of
100 feet to a point on the dividing line between Lots Nos. 71 and 72 in said plan;
thence along said dividing line, North 50° 30' West, a distance of 100 feet to a
point on the Southerly side of School Street; thence along the Southerly side of
School Street North 39° 30' East a distance of 100 feet to a point at the place of
beginning.

HAVING erected thereon a two story dwelling known as 2342 School Street,
Pittsburgh, PA 15235.

BEING designated as Block and Lot 655-S-170.

THIS conveyance is made subject to reservation of coal underlying said lots,
together with the mining rights as appear in prior deeds of record.


PARCEL TWO:

ALL that certain lot or piece of ground siutate in the Township of Penn Hills
(formerly known as the Township of Penn), County of Allegheny and Commonwealth of
Pennsylvania, being Lot No. 1 in the Girdich Plan of Lots, recorded in the
Recorder's Office of Allegheny County in Plan Book Volume 193, page 155 (a
subdivision of Lots 70, 71, 72, 73 in the New York and Cleveland Gas Coal Company
Plan, Plan Book Volume 5, page 96) said lot being more particularly bounded and
described as follows, to wit:

BEGINNING at a point on the Southerly side of School Street at the dividing line
between Lots 71 and 72 in the New York and Cleveland Gas Coal Company Plan; thence
along said dividing line, South 50° 30' East, a distance of 100 feet to a point on
the dividing line between Lots 71 and 72; thence by a line through Lots 71 and 72,
North 39° 30' East a distance of 100 feet to a point on the dividing line of Lots
69 and 70; thence along said dividing line, South 50° 30' East a distance of 100
feet to a point on the Northerly side of Hill Street; thence along the Northerly
side of Hill Street, South 39° 30' West, a distance of 110 feet to a point; thence
through Lot 72, North 50° 30' West a distance of 200 feet, to a point on the
Southerly side of School Street, thence along the Southerly side of School Street,
North 39° 30' East a distance of 10 feet to a point at the place of beginning.


MBV 18790PG238

BEING designated as Block and Lot GJ5 G-169.

BEING the same property which Robert P. Balestrieri and Hye Yong Balestrieri, his wife, by their deed dated June 4, 1999 and to be recorded, granted and conveyed unto Mark R. Davis, mortgagor herein and party of the first part hereto.

MBV18790PG239

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Mark R Davis_ (signature)
MARK R DAVIS

**Certificate of Residence**

I, the undersigned                                              do hereby certify that the correct address of the
within-named Lender is
2600 W. BIG BEAVER RD., TROY, MICHIGAN 48084

Witness my hand this   4th   day of   May,   1999          _Karen E. Clarey_ (signature)
                                                                              Agent of Lender

COMMONWEALTH OF PENNSYLVANIA,                                            County ss:
    On this  4th   day of   June   1999      before me, the undersigned officer, personally appeared
MARK R DAVIS

known to me (or satisfactorily proven) to be person      whose name   is      subscribed to the within instrument
and acknowledged that      he      executed the same for the purposes herein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:
┌─────────────────────────────────┐
│        Notarial Seal            │      _Karen E. Clarey_ (signature)
│  Karen E. Clarey, Notary Public │
│  O'Hara Twp., Allegheny County  │      _Notary Public_ (signature)
│ My Commission Expires Mar. 17, 2003│
└─────────────────────────────────┘      Title of Officer
Member, Pennsylvania Association of Notaries

FHA Pennsylvania Mortgage - 4/96                    Page 6 of 6                          PALFHADE

KBV18790PG240